# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:10CR00006 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RONNIE L. ROBBINS,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for the United States; R. Wayne Austin, Scyphers & Austin, P.C., Abingdon, Virginia, for Defendant.*

The defendant in this criminal case moves to quash an indictment charging a violation of the Stolen Valor Act, which prohibits a person from making false claims about the receipt of a military decoration or medal, on the ground that the law violates his right to free speech under the First Amendment.  For the reasons stated, I will deny the motion.

I

The Stolen Valor Act of 2005, Pub. L. No. 109-437, 120 Stat. 3266 (2006), provides that

> [w]hoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by

> Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal, or any colorable imitation of such item shall be fined under this title, imprisoned not more than six months, or both.

18 U.S.C.A. 704(b) (West Supp. 2010).

The Indictment returned by a grand jury of this court charges the defendant, Ronnie L. Robbins, with violating § 704(b).[1]  It alleges that Robbins served in the United States Army on active duty from 1972 to 1975, but did not serve overseas or in any combat capacity and was not awarded or entitled to any medals or awards related to such service.[2]  The Indictment charges that Robbins was a member of the Veterans of Foreign Wars ("VFW"), which requires that its members have overseas service in a foreign conflict.  While running for reelection to local political office, Robbins produced and distributed campaign material that stated that he was a recipient of the Vietnam Service Medal and the Vietnam Campaign Medal.  Robbins also wore the Vietnam Campaign Medal, the Vietnam Service Medal, and the Combat Infantryman's Badge on his military uniform at events he attended as a member of

---

[1] There has been a Superceding Indictment returned since the filing of the Motion to Quash which added charges against Robbins unrelated to the motion.  For convenience the Superceding Indictment will be included in any referred to the "Indictment."  Count Three of the Indictment charges a violation of § 704(b).

[2] Only for the purposes of the present motion, I will assume the truth of the factual allegations of the Indictment, although, of course, Robbins is presumed innocent unless and until proven guilty beyond a reasonable doubt.

the VFW honor guard.  Additionally, Robbins allegedly provided falsely altered documentation to the VFW misrepresenting his military service and asserting that he had been awarded the Vietnam Service Medal and the Vietnam Campaign Medal. Finally, it is alleged that Robbins provided altered documents to a local newspaper corroborating that he had received those medals.

In his Motion to Quash, Robbins challenges 18 U.S.C.A. § 704(b) on its face as an unconstitutional restriction of the right to free speech protected by the First Amendment to the United States Constitution.  In response, the government argues that because it involves false statements of fact, the speech regulated by § 704(b) is outside the protection of the First Amendment.  The defendant's motion has been briefed and heard and is ripe for decision.

II

There apparently have been few prosecutions by the government under the Stolen Valor Act.  However, recently it has been has been found unconstitutional twice — once by the majority of a panel of the United State Court of Appeals for the Ninth Circuit, *United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010), *petition for reh'g and reh'g en banc filed*, No. 08-50345 (Sept. 30, 2010), and once in the District of Colorado, *United States v. Strandlof*, No. 09-cr-00497-REB, 2010 WL 4235395

(D. Colo. July 16, 2010), *appeal docketed*, No. 10-1358 (10th Cir. Aug. 13, 2010). While the defendant naturally urges me to follow these decisions, I respectfully disagree with them, and find that the false statements of fact implicated by the statute are not protected by the First Amendment.

A

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Despite this broad language, there are recognized categories of speech that are excluded from this protection. "'[T]he freedom of speech' referred to by the First Amendment does not include a freedom to disregard these traditional limitations." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383 (1992).[3]

One of the recognized categories involves falsity. While "there is no such thing as a false idea" undeserving of protection, *Gertz v. Robert Welch, Inc.*, 418

---

[3] The existence of limitations to the protection of free speech was recognized by Justice Holmes in his famous statement that "[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." *Schenck v. United States*, 249 U.S. 47, 52 (1919). In its recent opinion in *United States v. Stevens*, 130 S. Ct. 1577, 1584, 1586 (2010), the Supreme Court noted examples of excluded categories such as obscenity, defamation, fraud, incitement, speech integral to criminal conduct, and child pornography. There is no indication that the Court intended to make this listing exhaustive, and, indeed, its mention of "defamation" as an excluded category supports the historical exclusion of false statements of fact. *See Alvarez*, 617 F.3d at 1225 (Bybee, J., dissenting).

U.S. 323, 339 (1974), "there is no constitutional value in false statements of fact." *Id.* at 340.

Although the declaration in *Gertz* was made without citation and was recognized as dicta by the Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990), since *Gertz*, the assertion that false statements of fact are not protected has been repeated and relied upon and is now the prevailing understanding of the law. *See, e.g., Bose Corp. v. Consumers Union of U. S., Inc.*, 466 U.S. 485, 504 n.22 (1984); *see also* Jonathan D. Varat, *Deception and the First Amendment: A Central, Complex, and Somewhat Curious Relationship*, 53 UCLA L. Rev. 1107, 1112-13 (2006).

The general exclusion of false statements from First Amendment protection is consistent with Supreme Court cases dealing not only with defamation, but also with fraud, *see Ill. ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003) ("[T]he First Amendment does not shield fraud."), and commercial speech, *see Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 771 (1976) (holding that false statements in advertising are not protected).

On the other hand, despite the assertion in *Gertz* that false statements are valueless, the Court did not intend to exclude all false statements from the protection of the First Amendment: "Although the erroneous statement of fact is not worthy of

constitutional protection, it is nevertheless inevitable in free debate." *Gertz*, 418 U.S. at 340. "The First Amendment requires that we protect some falsehood in order to protect speech that matters." *Id.* at 341. Therefore, *Gertz* stands for the proposition that false statements of fact are generally unprotected, but some speech — "speech that matters" — is protected.

For these reasons, the relevant rule in this case is that false statements of fact are generally unprotected, aside from the protection for "speech that matters." *Id.* at 340-41.

B

Before determining whether the speech at issue is "speech that matters," and thus not covered by the exception to constitutional protection, I must determine what speech is covered by the Stolen Valor Act. It is a long-held canon of construction that a statute should be read, if reasonable, to avoid constitutional problems, because "[t]he courts will. . . not lightly assume that Congress intended to infringe constitutionally protected liberties." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). The unconstitutionality of the statute need not be plain in order to apply this rule of statutory construction, but only doubtful without it. *Almendarez-Torres v. United States*, 523 U.S. 224, 250 (1998) (Scalia, J., dissenting).

Applying this established canon of construction, the statute here should be read narrowly with certain reasonable limitations so that it is not facially overbroad, impermissibly applying to protected speech.[4]  Importantly, "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).  By reading the statute narrowly with reasonable limitations, the constitutional problem of overbroadness is avoided.

The government concedes that the statute should be read to criminalize only <u>knowingly</u> false statements.  I conclude that the statute also should be read to include a mens-rea requirement that the defendant <u>intended to deceive</u>.  *See United States v. Esparza-Ponce*, 193 F.3d 1133, 1137-38 (9th Cir. 1999) (holding that in order to avoid First Amendment question, criminal statute punishing false representation of U.S. citizenship should be read to require proof that person to whom false statement was made had good reason to inquire into nationality status); *United States v. Achtner*, 144 F.2d 49, 52 (2d Cir. 1944) (same).

---

[4]  In the First Amendment context, a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n.6 (2008) (internal quotation marks and citation omitted).

Like the actual malice requirement applied in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), the "knowingly" limitation will prevent suppression of speech that is not intentionally false and deceptive but rather is the result of mistake or confusion. Additionally, the criminal intent requirement will protect speakers who utter protected false statements in fiction, in parody, or as rhetorical hyperbole. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 57 (1988) (holding that liability for publishing an ad parody is inconsistent with the First Amendment); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (holding that liability for publishing rhetorical hyperbole "would subvert the most fundamental meaning of a free press"). The limitations also ensure that speakers of ambiguous, but innocently-made statements are not punished when the statement is incorrectly understood. Read with these limitations, only outright lies, not ideas, are punishable.

These limitations are consistent with the balancing test employed by the Supreme Court in First Amendment cases regarding defamation. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 755-56 (1985) (explaining the balancing of interests that occurred in *Sullivan* and *Gertz*). Particularly, knowledge, or scienter, has not been required where the victim of defamatory statements lacks effective opportunities for rebutting the false statements, *Gertz*, 418 U.S. at 344, and the government has a stronger interest in allowing the victim's rights

to be vindicated through defamation liability. *Id.* at 345-46. However, scienter is required in other cases because of an increased interest in permitting speech concerning the public interest and because certain public targets are better able to employ a public forum to respond to false statements. *See Dun & Bradstreet*, 472 U.S. at 755-56. Here, the speech arguably addresses a matter of public concern, and the government may employ a public forum to clarify the record regarding who has received military honors. A scienter requirement is also consistent with the case law regarding when punitive damages may be awarded in defamation cases. *See Gertz*, 418 U.S. at 349.

C

Properly limited, the speech restricted by the Stolen Valor Act is not "speech that matters" and falls outside the protection of the First Amendment. *See Id.* at 341. This conclusion is supported by examining the dominant reasons why some false statements, such as political, historical, or scientific speech, may be protected as speech that matters.

First, some lies are protected to prevent a chilling effect that would stifle protected statements. *See* Brief of *Amicus Curiae* Eugene Volokh at 6, *United States v. Strandlof*, No. 09-cr-00497-REB, ECF No. 30-2 (D. Colo. Jan. 15, 2010) ("Volokh Brief"). Criminal or civil liability for false speech could lead to self-censorship when

- 9 -

the speaker is unsure about the truth of his assertions. *Sullivan*, 376 U.S. at 278-79. Even if a speaker is confident that the statement is true, he "may worry that a hostile jury will wrongly conclude that the statement is false." Volokh Brief at 6. Self-censorship caused by the chilling effect may not only prevent the targeted, unprotected speech but also inhibit speech that is protected by the First Amendment and valuable in encouraging robust debate.

Second, some false statements may actually promote truth and legitimacy. In the marketplace of ideas, some ideas will be wrong, but the wrong ideas will instill in the public greater confidence that what is accepted as the truth really is true. *See Sullivan*, 376 U.S. at 279 n.19; *Varat*, 53 UCLA L. Rev. at 1118-19, 1121. Scholars have posited that there may be constitutional protection for false statements, even if knowingly false, about historical figures, historical events, or scientific theories. *See* Volokh Brief at 7; *Varat*, 53 UCLA L. Rev. at 1117-18. Similarly, there is constitutional protection for parodies and hyperbole which, while false, intend to convey a legitimate message. *See Hustler Magazine*, 485 U.S. at 57; *Greenbelt Coop. Publ'g Ass'n*, 398 U.S. at 14.

Third, enforcement as unlawful by the government may create a conflict between the motivations of the government and the imperatives of free speech under some circumstances. Perhaps for this reason, there is no legally recognized libel on

the government.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 919 F. Supp. 756, 759 (D.N.J. 1996); *City of Chicago v. Tribune Co.*, 139 N.E. 86, 90 (Ill. 1923).  Additionally, if the dominant forces in government were able to police truth and falsity, partisanship could pervade the protection of speech.  *See Varat*, 53 UCLA L. Rev. at 1120.  At least one court has protected calculated lies made during election campaigns based in part on this rationale.  *State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm.*, 957 P.2d 691, 696-97 (Wash. 1998). *But see State v. Davis*, 499 N.E.2d 1255, 1258 (Ohio Ct. App. 1985) (upholding a statute imposing criminal sanctions for making knowingly false statements in political campaigns).

These justifications do not support a conclusion that the Stolen Valor Act criminalizes protected speech.  First, and perhaps most importantly, as interpreted it is unlikely to have a chilling effect on legitimate speech.  The statements at issue are made about oneself and are easily verifiable using objective means.  There is no risk of stifling opinions or true statements.  Additionally, the speakers targeted by the law do not advocate any particular political or cultural viewpoint or question prevailing dogma or beliefs about any historical or scientific issue.  Therefore, the justification that some false speech strengthens and clarifies the truth is inapplicable.  There is no room for debate on such an easily verifiable fact when the speaker speaks with

knowledge of his statement's falsity and with the intent to deceive.  Moreover, there is no likelihood that a political majority would be able to use the law to censor legitimate speech or discriminate based on a particular viewpoint.  This is not the sort of regulation that threatens to suppress particular ideas.  *See R.A.V.*, 505 U.S. at 390 (finding speech outside of constitutional protection where "there is no realistic possibility that official suppression of ideas is afoot").

D

The majority of the panel of the Ninth Circuit expressed concern that the constitutionality of the Stolen Valor Act would permit the criminalization of lying about such matters as one's weight or age or smoking habits.  *Alvarez*, 617 F.3d at 1200.  Although I share the judges' concern about potential, albeit unlikely, government intrusion into such private behavior, the Constitution's privacy protection would better apply to prevent a slide down that slippery slope towards regulation of wholly private interactions.  *See, e.g., Stanley v. Georgia*, 394 U.S. 557, 568 (1969) (recognizing a right to possess obscene materials in the privacy of one's home).  The constitutionality of lying about such private matters is not the question in this case.

The purpose of the Stolen Valor Act is to prevent claims that "damage the reputation and meaning of [military] decorations and medals."  Pub. L. No. 109-437, § 2(1), 120 Stat. 3266.  Restricting such statements supports military discipline and

effectiveness, a legitimate legislative concern under the Constitution.  *See* U.S. Const.

art. I, § 8, cl. 12. As properly construed, these restrictions fall outside the traditional

scope of First Amendment protection and § 704(b) is thus not unconstitutional.


### III

Robbins is also charged in Count Four of the Indictment with violating another

subsection of the statute, which  provides that

> [w]hoever knowingly wears, purchases, attempts to purchase,
> solicits for purchase, mails, ships, imports, exports, produces blank
> certificates of receipt for, manufactures, sells, attempts to sell, advertises
> for sale, trades, barters, or exchanges for anything of value any
> decoration or medal authorized by Congress for the armed forces of the
> United States, or any of the service medals or badges awarded to the
> members of such forces, or the ribbon, button, or rosette of any such
> badge, decoration, or medal, or any colorable imitation thereof, except
> when authorized under regulations made pursuant to law, shall be fined
> under this title or imprisoned not more than six months, or both.

18 U.S.C.A. 704(a) (West Supp. 2010).

While Robbins also includes this provision in his attack on the statute, I find

that it is likewise constitutional.  In *Schacht v. United States*, 398 U.S. 58, 61 (1970),

the Supreme Court stated, "Our previous cases would seem to make it clear that 18

U.S.C.A. § 702, making it an offense to wear our military uniforms without authority

is, standing alone, a valid statute on its face."  Although § 704(a) addresses the

wearing of military medals, the analysis is likely similar to the analysis for wearing military uniforms and the outcomes should likely be consistent.  However, because that question of the constitutionality of § 702 was not the precise issue in *Schacht*, one can be guided only by the "previous cases" referenced by the Court.

The primary authority for the Court's assertion was *United States v. O'Brien*, 391 U.S. 367 (1968).  There, the Court upheld a law that banned the destruction of one's selective service registration certificate.  *Id.* at 377.  According to the holding in *O'Brien*, government regulation of expressive conduct is sufficiently justified if it is within the constitutional power of the government, it furthers a substantial government interest, the interest is unrelated to the suppression of free speech, and incidental restrictions on freedom are no greater than is essential for the furtherance of the interest.  *Id.*

Like the statute banning the wearing of military uniforms, § 704(a) satisfies the test outlined in *O'Brien*.  The power to regulate the military is clearly within the constitutional power of the government.  *See id.* ("The constitutional power of Congress to raise and support armies and make all laws necessary and proper to that end is broad and sweeping.").  Preventing individuals from wearing honors they did not earn furthers a substantial government interest in honoring specified members of the military and preserving the respect and novelty of legitimate military decorations.

- 14 -

The statute's purpose is not related to the suppression of free speech, and incidental restrictions on freedom are no greater than is essential for the furtherance of that purpose.

III

The challenged statute is constitutional. Accordingly, it is **ORDERED** that the Motion to Quash Indictment (EFC No. 15) is DENIED.

ENTER: January 3, 2011

/s/ JAMES P. JONES
United States District Judge