# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) | Case No. 2:10CR00006 |
| v. ) | **OPINION AND ORDER** |
| **RONNIE L. ROBBINS,** )<br>) | By: James P. Jones<br>United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for the United States; R. Wayne Austin, Scyphers & Austin, P.C., Abingdon, Virginia, for Defendant.*

In this criminal case, I consider the defendant's post-trial Motion for Judgment of Acquittal.

I

The defendant, Ronnie L. Robbins, an Army veteran of the Vietnam era, was charged in a Superseding Indictment with using a falsely altered certificate of discharge (Counts One and Two), falsely representing that he had been awarded a military medal (Count Three), making false statements to obtain veteran's benefits

(Count Five), and engaging in mail fraud in connection with his application for benefits (Count Six).[1] He was tried by a jury and found guilty on all counts.

The defendant has filed a timely Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c), contending that the evidence was insufficient to convict him of any of the charges. He also renews a constitutional attack as to Count Three. The government opposes the motion, which has been briefed and is ripe for decision.

After careful consideration of the record and the arguments made by counsel, I will deny the motion.[2]

II

The defendant argues that the government failed to carry its burden of proving the defendant's guilt. The government maintains that the guilty verdicts were supported by sufficient evidence.

In considering the evidence, I must keep in mind that "the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts

---

[1] Count Four of the Superseding Indictment was previously dismissed upon the motion of the government.

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

in the evidence presented." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (internal quotation marks and citation omitted). In this process, I view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the government. *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003). The question is whether the convictions are supported by substantial evidence which is defined as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (internal quotation marks and citation omitted).

A

Counts One and Three are supported by many of the same facts, and I consider them together. Count One charged the defendant with using, unlawfully possessing, or exhibiting a certificate of discharge from the military knowing it was forged, counterfeited, or falsely altered. 18 U.S.C.A. § 498 (West 2000). Count Three charged the defendant with falsely representing himself to have been awarded a military medal or decoration. 18 U.S.C.A. § 704(b) (West Supp. 2010). In particular, the defendant was charged with claiming that he had been awarded the Vietnam Service Medal and Vietnam Campaign Medal.

The evidence at trial showed that defendant Robbins had served in the United States Army from 1972 to 1975, when he received an honorable discharge.

He attained the rank of E-5 (sergeant) and last served as a military policeman at Fort Bragg, North Carolina. He did not serve overseas and accordingly was never awarded the Vietnam Service Medal or the Vietnam Campaign Medal.

The Veterans of Foreign Wars ("VFW") is an organization of former members of the military who have served overseas. The defendant became active in the VFW and was selected as a district officer. In order to qualify, he was asked to provide proof of his military service overseas. Charles Raymond Wells, then the VFW district commander, testified at trial that in response to the request, Robbins had faxed him a certificate of discharge from the military, called a DD-214, in late 2006. This document, Government Exhibit Two, indicated that Robbins had foreign service of nine months and seven days and that he had received the Vietnam Service Metal and the Vietnam Campaign Medal, all of which was untrue. Wells was suspicious because of the appearance of the form and accordingly sent it on to Kim Deshano, who was an officer of the state VFW. An investigation ensued, and in 2007 Robbins was terminated from the VFW by the national organization.

The defendant argues that Wells' testimony was insufficient to prove the charge because Wells testified that the DD-214 shown to him at trial and introduced as an exhibit might not have been the same form he received from Robbins. Wells was concerned because the exhibit did not have a date or

telephone number at the top of the page as normally shown on a faxed document. The defendant also argues that Wells was unworthy of belief. First, he needed to review his grand jury testimony to recall the year in which the event occurred. Second, he was inconsistent in naming the city in Vietnam where he said the defendant had claimed he had served. Third, Wells equivocated at trial about his earlier statement to the grand jury that he had seen the defendant wearing a Vietnam Service Medal.

Deshano also testified, and agreed that he had received the DD-214 from Wells. He testified that he had turned it into a PDF file and had destroyed the original document. He stated that he had scanned the entire document but acknowledged that the government's exhibit did not have numbers on it indicating that it once had been sent or received via facsimile transmission.

The guilty verdicts for Counts One and Three were supported by substantial evidence. While there were inconsistencies in the evidence, a jury could still reasonably infer from the testimony that the defendant sent the VFW a DD-214 that falsely showed that he had served overseas and had been awarded the medals in question. The jury could have properly determined that Wells was essentially credible, despite his lack of memory about some of the events that had occurred over four years before. Whether the false DD-214 was actually sent by Robbins because of the exhibit's lack of fax numbers was a matter for the jury to decide.

The jury might have reasonably decided that it was an insignificant inconsistency either because Deshano's later scanning of the document obliterated those numbers or because the document had been delivered or mailed rather than being faxed, as Wells recalled.

In addition, there was significant corroborating evidence presented showing Robbins' guilt. For example, the government presented at trial a video of Robbins stating at a public Veterans Day event that he had served in Vietnam. His false assertion of having received the Vietnam War medals was obviously a way of supporting his claim of foreign service. Additionally, Robbins served as a county elected official and his political campaign materials on file with a local newspaper stated that he had received these medals. A former employee of Robbins, Shelbie Jean Willis, testified that in the fall of 2007, Robbins had shown her a DD-214 and pointed out that it indicated that he had received the two Vietnam service medals. He had also showed her and other employees an album of photographs that he said were taken when he served in Vietnam. Another former employee, Kathy Bare Stapleton, testified that in 2003 Robbins had told her that he had served in Vietnam. A fellow member of the VFW, James Allen Tickle, testified that Robbins had told him that he had served in Vietnam.[3]

---

[3] Robbins did not testify at trial. His only witnesses were two fellow members of the American Legion who testified that Robbins had not worn the medals in question on his uniform on ceremonial occasions or otherwise claimed to have served in Vietnam.

B

Count Two charged the defendant with using or exhibiting a falsely altered certificate of discharge on a different occasion from Count One. In support of this charge, Paula Tate, a reporter for a local newspaper, testified for the government.

In a political campaign in the fall of 2006 Robbins' opponent had questioned Robbins' honesty about his military service. Tate identified two DD-214 forms as ones she had received from Robbins while investigating this political story for the newspaper. Robbins' DD-214 taken from the military archives, introduced by the government, contained zeros in the space on the form showing years, months, and days of foreign service. In the DD-214s given to Tate by Robbins, the zeros were gone and the vertical lines between the columns showing those zeros had also been removed, appearing to her that the original information had been "whited out." (Trial Tr. 101, Mar. 1, 2011.) When she questioned Robbins about the fact that no foreign service was shown on the DD-214s he had given her, he told her that "although the record did not reflect service that he had, that . . . there was service he had taken an oath not to discuss." (*Id.* at 104.) He told her at one point, "We were in places we weren't supposed to be, things I'm not supposed to talk about." (*Id.* at 105.)

The defendant argues that an alteration that does not have some element of falsity or deceit cannot support a conviction of false alteration. Therefore, he

maintains, the absence of zeros on the DD-214s given to the reporter by Robbins is insufficient to support a conviction. The defendant argues that the documents, even if altered, did not contain any false or incorrect information and were therefore not "forged, counterfeited, [or] falsely altered" as charged.

Counterfeited means imitated, simulated, feigned, or pretended. *United States v. Smith*, 318 F.2d 94, 95 (4th Cir. 1963). A counterfeit document is "an imitation of a genuine document having a resemblance intended to deceive and be taken for the original." *United States v. Anderson*, 532 F.2d 1218, 1224 (9th Cir. 1976) (quotation marks, citations, and alterations omitted). The common law definition of forgery is "'the fraudulent making or alteration of a writing to the prejudice of another man's right.'" *Gilbert v. United States*, 370 U.S. 650, 657 n.10 (1962) (quoting Blackstone). As acknowledged by the Fourth Circuit in *United States v. Pomponio*, 558 F.2d 1172, 1174 (4th Cir. 1977), forgery commonly includes an element of intent to defraud.

The government argues, and I agree, that there was adequate evidence presented at trial. The absence of the zeros was a sufficient alteration to support a conviction. The jury could reasonably believe that the defendant used the altered documents to hide the fact that he had not served overseas, particularly in light of his cover story that the absence of any numbers showing years, months, or days of foreign service was because he had served in some secret or clandestine position.

The jury could infer that Robbins altered the form to show blanks in the foreign service columns because he believed that if the DD-214 positively showed a lack of foreign service by the presence of zeros, it would be more difficult for him to pretend that he had served in Vietnam.

C

Because Counts Five and Six also relied on many of the same facts, I will consider them together. Count Five charged the defendant with knowingly and willfully making false statements to the government and using a materially false writing or document knowing it contained materially false, fictitious, or fraudulent statements. 18 U.S.C.A. § 1001(a)(2),(3) (West 2000 & Supp. 2010). In particular, it charged the defendant with making false statements in his application for disability benefits from the Department of Veterans Affairs (the "VA"). Count Six charged the defendant with mail fraud. 18 U.S.C.A. § 1341 (West Supp. 2010). It charged the defendant with using the mail in connection with his plan to fraudulently obtain those disability benefits.

In 2009, Robbins obtained veteran's disability benefits based on a diagnosis of post traumatic stress disorder ("PTSD").[4] In obtaining those benefits, he submitted to the VA on a form entitled "Statement in Support of Claim for Service

---

[4] Robbins already had a 30% disability rating because of a hearing loss. The PTSD award increased his disability rating to 70%, producing a much larger monthly monetary benefit.

Connection for Post-Traumatic Stress Disorder (PTSD)" the following written statement:

> I was stationed at Ft. Bragg NC in 503d Military Police Battalion 21st MP Company as a military policeman. In Oct. 1973 one of my best friends was killed at main post bank by a man trying to rob the bank. A silent alarm had been set off and it was not in my area of patrol. We then got a call on the radio for backup. When I got to the scence [sic] James Boyd had already been shot by the person that had tried to rob the bank. I can still see James laying there and the blood on the ground. We held a memorial out in front of the 21st MP Co and took turns standing there. I have lived with this for over 30 years. For the last several months my dreams have been occurring more often. I see James standing over top of me and trying to talk to me. I then wake up and James is gone. I heard James in the next room but when I get up there is no one there. I also have dreams of James laying there at the scene.

(Gov't Ex. 12.) The government charged that this statement was materially false and was made in furtherance of a fraudulent scheme to obtain benefits.

At trial, Ralph A. Romero, a former military policeman at Fort Bragg, testified for the government. He was on duty as MP shift commander on October 31, 1973, when a Texaco station on the Army post was robbed by two armed men. Romero was in a jeep driven by PFC James Boyd when they received a radio call about the robbery. They eventually intercepted the robbers along a highway and in an ensuing gun battle Boyd was killed, both of the robbers shot, and one killed.

Romero testified that he and Boyd were close, and along with two other soldiers in his squad, were "like a little clique." (Trial Tr. 160, Mar. 1, 2011.) He was uncertain if he knew Robbins, but testified that he may have been in his

battalion. He said that he did not remember anyone with that name at the scene of the shooting. (*Id.* at 172.)

Heather Flora, a rating specialist with the VA who was involved in the decision to award Robbins PTSD benefits, also testified on behalf of the government. She stated that three requirements had to be met for a finding of service-connected PTSD. There must be a "stressor," a PTSD diagnosis, and a service-connected link between the two. The veteran is required to submit a statement of the stressor, or in other words, "what happened in the service that they feel led them to have this condition." (Trial Tr. 206, Mar. 1, 2011.) While the government attempted to show during trial that as part of his scheme Robbins had exaggerated his psychological symptoms, such as claiming to be withdraw and depressed when in fact he was an active and outgoing person, the real question presented for the jury was the falsity and materiality of Robbins' PTSD statement.

The defendant maintains that no evidence was offered to undermine Robbins' description of the stressor incident except for the location of the robbery, which he claims was immaterial to the granting of benefits. In support of his position, he notes that Flora testified that it was not necessary for the VA to verify every detail of an applicant's statement. Furthermore, Flora testified that an applicant theoretically could qualify for service-connected PTSD disability

benefits if there was a death in his unit, regardless of whether the applicant had a close relationship with the decedent or observed the body.[5]

The government argues that substantial evidence supported the jury's finding that Robbins made materially false statements. The false information in the statement, the government contends, if known to have been false by the VA, would reasonably have affected the decision to award PTSD benefits.

The government asserts that the testimony of Dale Shastid also supports Robbins's guilt. Shastid, who had been stationed as an MP at Fort Bragg, and was a close friend of Robbins at the time, testified that in December of 2010 Robbins had asked him to write a "To Whom It May Concern" letter about Boyd's death so that Robbins could get benefits relating to PTSD. He stated that Robbins had asked him to say in the letter that Robbins had been on duty on the day of the shooting even through Shastid did not know whether that was true or not. In fact, Robbins had received his PTSD award when he made the request to Shastid and had already been indicted in this case, but the government contends that the incident shows Robbins fraudulent intent.

---

[5] In his PTSD statement, Robbins also relied on a second death, that of another MP, Joel Dansby, who was killed in a traffic accident in November of 1974, and who Robbins claimed that he knew "very well also." (Gov't Ex. 12.) In its decision awarding benefits, however, the VA relied only on the death of James Boyd as the "reported stressor." (Gov't Ex. 13.) The government did not contend at trial that Robbins' statement concerning Dansby was false.

Shastid also testified that he had not seen Robbins and Boyd "hanging out," as far as he could recall. (Trial Tr. 194, Mar. 1, 2011.)

I agree with the government that there was sufficient evidence presented for the jury to reasonably find that Robbins' submission to the VA contained false and material statements.

As the jury was correctly instructed, a statement is material "if it has a natural tendency to influence agency action or is capable of influencing agency action." (Final Jury Instruction No. 16.) In determining materiality, there is no requirement that a false statement actually influence or affect the decision-making process of an agency. *United States v. Arch Trading Co.*, 987 F.2d 1087, 1095 (4th Cir. 1993). Even statements that are obviously false and therefore not relied upon can be material. *See United States v. Sarihifard*, 155 F.3d 301, 307 (4th Cir. 1998); *see also United States v. Diaz*, 690 F.2d 1352, 1358 (11th Cir. 1982) (finding that a statement can be material even if it is ignored or never read by the agency).

It is true, as the defendant points out, that Flora, the VA specialist, agreed on cross examination that if the "only single difference" had been that the robbery was not at a bank, it would not have been material to the VA decision. (Trial Tr. 227, Mar. 1, 2011.) However, the problem was not simply with Robbins' statement that the robbery occurred at a bank instead of a Texaco station. He added the detail

about a "silent alarm," traveling to the scene of the shooting as "backup," and seeing Boyd's body. The jury could reasonably have found that these details, along with the claim that Boyd was a best friend, were not only untrue, but also material.

Flora testified that she relied on the stressor statement in making her determination as to whether Robbins was eligible for benefits and that if she had known that certain details of the statement were false, she would not have approved benefits.[6]

Furthermore, the details about the circumstances of a traumatic event are material because they are capable of influencing agency action. The VA required Robbins to provide a stressor statement detailing the traumatic event that caused his PTSD; it did not merely ask him to certify that his PTSD was service-related. It is appropriate to assume that the VA's request for details about the traumatic event was not superfluous, but rather provided information that would be important to the agency's disability determination. Consistent with that assumption, VA regulations require a determination to be based on review of the entire evidence of record, including the places, types, and circumstances of a veteran's service and all relevant medical and lay evidence. 30 C.F.R. § 3.303 (2010). Notably, the government did not have to prove that the particular details at question here

---

[6] In fact, on February 15, 2011, the VA terminated Robbins' benefits for PTSD. (Trial Tr. 244, Mar. 1, 2011.)

actually affected the decision-making process of the agency in this case. *See Arch Trading Co.*, 987 F.2d at 1095 (finding materiality where the defendant falsely stated that it had a license, even though the government's response was that no license was required).

Although Flora testified that not all of the details in a stressor statement have to be verified, the regulations require credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f) (2010). Flora indicated that some details are often "conceded" simply to avoid the arduous administrative task of confirming all of the details in a stressor statement. (Trial Tr. 212, Mar. 1, 2011.) She did not indicate that the details would have no bearing on an award of benefits. She stated that, generally, the circumstances of a traumatic event are important and that it was important that Robbins reported that he was present at the scene described in the stressor statement. Therefore, the exclusion of the details, or knowledge of their falsity, may have made the agency view the application differently. *See United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993) (holding that a fact was material if it may have caused the agency to view a government contract bid differently, even if the fact was not determinative).

Most importantly, Flora testified that had she known about the inconsistencies, she would not have been able to verify that the stressor described by the veteran was linked to his PTSD diagnosis. Flora explained that the

traumatic events that support an applicant's PTSD diagnosis must be the same as that described in the stressor statement; that is, there must be a link between the statement and the diagnosis. *See* 38 C.F.R. § 3.304(f). Flora stated, "[T]he examiner linked this specific statement here to the diagnosis, so I would not have a verifiable stressor at that point if I knew [those were] not the circumstances." (Trial Tr. 219, Mar. 1, 2011.)

Without a stressor statement that accurately described the circumstances of the traumatic event, the validity of the link between the PTSD diagnosis and the stressor statement would be called into question. Although no mental health experts testified at trial, the inconsistencies shown at trial call into question the stressor statement as a whole, and importantly, the aspects of the statement that would tend to bolster Robbins' claim that the specific event described caused him PTSD. Flora testified that while some minor details in a stressor statement might not be material, "what the veteran witnessed himself . . . makes a difference in the examiner's determination of the symptomatology and all related to PTSD." (Trial Tr. 224, Mar. 1, 2011.) The doctors who examined Robbins specifically noted that Robbins had "[a]nguish at friend's death," that he "feels guilty because he didn't arrive soon enough to save him," that "[h]is best friend was shot and killed during the holdup attempt," that "[h]e arrived on the scene to find his friend bleeding to death," that he had "intrusive recollections and nightmares regarding

the loss of a close friend," that he "reports daily thoughts of his friend who died while he was in the service, and will see his friend lying in a growing pool of blood." (Gov't Ex. 17.) Based on these records, it appears that the circumstances of the event and the relationship between Robbins and Boyd were noteworthy and tended to explain Robbins' symptoms and tie them to his military service.

When details in a stressor statement have a natural tendency to influence whether PTSD would be diagnosed and whether that diagnosis would be properly tied to a veteran's service, they are material. The details that were undermined by the evidence at trial were significant and were relevant to the agency's determination that Robbins suffered from a service-related disability.

III

The defendant also renews his argument that a conviction under Count Three of the Superseding Indictment would violate his First Amendment rights. The argument was previously rejected in this case, *United States v. Robbins*, No. 2:10CR00006, 2011 WL 7384 (W.D. Va. Jan. 3, 2011), and I adhere to my prior ruling.

For the foregoing reasons, it is hereby **ORDERED** that the defendant's Motion for Judgment of Acquittal (ECF No. 92) is DENIED.

ENTER: May 22, 2011

/s/ James P. Jones
United States District Judge